UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DONALYN SOMMERS n/k/a**
**DONALYN WALSH,**

    **Plaintiff,**

v.                                              Case No.  8:05-cv-303-T-30MSS

**PEDIATRIC SERVICES OF AMERICA,**
**INC.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Pediatric Services of America, Inc.'s (hereinafter "Defendant") Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 26) and Plaintiff Donalyn Sommer n/k/a Donalyn Walsh's (hereinafter Plaintiff) Response in Opposition to the same (Dkt. 27).  Defendant argues that it is entitled to summary judgment on Plaintiff's claims of unlawful termination in violation of the Florida Whistleblower's Act, Fla. Stat. §§ 448.101 - 448.105 (2004).

### I. FACTUAL BACKGROUND

Defendant is an organization engaged in the business of supplying home medical services, including equipment and nursing services, to its patients as an alternative to institutional care.  Plaintiff is a former Office Manager for Defendant's St. Petersburg branch.  At the time Plaintiff began her employment, Tricia Livingstone was the Location Manager for the St. Petersburg branch.

In May 2003, Plaintiff reported to Defendant that Certificates of Medical Necessity (hereinafter "CMN") were being altered by Ms. Livingston, a violation of Medicare and Medicade regulations[1]. As a result, Ms. Livingston's employment was terminated. Subsequent to Ms. Livingston's termination, Sharon Seel was appointed interim Location Manager for the St. Petersburg branch. Plaintiff alleges that after Ms. Seel's appointment, Ms. Seel, due to her friendship with Ms. Livingstone, began to retaliate against Plaintiff, specifically by removing supervisor duties from Plaintiff, moving the payroll book from Plaintiff's office to Ms. Seel's office, and finally terminating Plaintiff's employment.

After her termination, Plaintiff filed suit against Defendant alleging Ms. Seel terminated Plaintiff in retaliation for reporting Ms. Livingston's illegal activity.

## II. DISCUSSION

### A.   Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the

---

[1] After Plaintiff's report, Defendant conducted an investigation into the allegation. It was determined that Ms. Livingstone had in fact altered CMNs. Subsequent to this incident, Defendant conducted training for all employees advising them of the proper way to address either incorrect or incomplete information on the CMN. All employees were instructed they were not to manually change any CMNs.

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Summary judgments for defendants are not rare in employment discrimination cases. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Indeed, where the evidence supporting a plaintiff's employment claim "is merely colorable or is not significantly probative, summary judgment should be granted." Id. at 1080. Conclusory, self-serving, or uncorroborated allegations do not create any issue of fact that can defeat summary judgment. See id. at 1081.

### B.  Legal Analysis.

Defendant argues that summary judgment is appropriate because Plaintiff cannot establish a *prima facie* case of whistleblower retaliation.[2] To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action. See Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 715 (11th Cir. 2002). Defendant contends that Plaintiff cannot establish the third prong of the *prima facie* case, i.e. a causal connection between her communication about the altering of the CMNs in April and May 2003 and her termination in July 2003. In order to establish this causal connection, a plaintiff must have evidence that the ultimate decision maker had *actual* knowledge of the plaintiff's protected

---

[2] In analyzing a claim filed under the Florida Whistleblower's Act, the analysis used in Title VII retaliation cases should be applied. See Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950 (11th Cir. 2000).

activity at the time the decision maker made the adverse employment decision. See McShane v. U.S. Attorney General, 144 Fed. Appx. 779,791 (11th Cir. 2005). According to Defendant, Plaintiff is unable to establish a causal connection because Plaintiff lacks evidence that the decision maker, who Defendant identifies as Ms. Seel, had knowledge about Plaintiff's report of illegal activity at the time the decision was made to terminate Plaintiff's employment.  Ms. Seel's lack of knowledge of Plaintiff's protected activity, according to Defendant, is fatal to Plaintiff's retaliation claim.  However, after careful review of the record, this Court finds that a genuine issue of material fact exists as to whether Ms. Seel actually was the decision maker.

In Defendant's Motion for Summary Judgment, Defendant contends that Ms. Seel was the person who made the decision to terminate Plaintiff's employment.  However, in reviewing the various deposition transcripts filed in support of Defendant's Motion for Summary Judgment, there appears to be some disagreement among Defendant's own witnesses as to who made the ultimate decision and who had the authority to terminate Plaintiff.  For example, in Julie Bowman's deposition, she testified:

> Q: At the St. Petersburg location, who made the decision to fire people?
>
> A: The location managers would have been part of that, although PSA at the time I was there had a policy that a location manager could not fire anyone without corporate approval.

(Dkt. 16 at 37).
. . .
> Q: Yes. You said there was a process that PSA had in place. How's the process begin?

> A: A location manager was not allowed to terminate anyone's employment without talking with either me or VP of Human Resources.
>
> Q: Who was the VP of [H]uman [R]esources?
>
> A: Kim Singleton.
>
> Q: So a location manager would call you up?
>
> A: Location manager would call or send an e-mail or made some form of communication if there was an issue. That issue would be discussed and guidance would be given to the manager. There's a formal process that we went through with a written warning and that whole process if that was warranted. If it wasn't warranted, or the infractions were severe enough, **then the decision would be jointly made between Kim Singleton and myself as to termination**.

(Dkt. 16 at 38) (emphasis added).

Additionally, Kim Singleton testified:

> Q: Then the location director who on the HME side would have had the ability to hire and fire people at the St. Petersburg office?
>
> A: Hire and fire? Sharon Seel and Julie Bowman.
>
> Q: Did Julie Bowman work at the St. Petersburg office?
>
> A. No.
>
> Q: Why would she have had the authority to hire or fire people at the St. Petersburg office?
>
> . . .
>
> A: Firing decision should not be made by the location director without input from somebody at the corporate office, either Julie Bowman or myself.
>
> Q: And how would Sharon Seel have had the authority to make decision regarding hiring and/or firing?

> . . .
>
> A: **She should not have made decisions regarding firing people without input or approval from the corporate office**.

(Dkt. 17 at 29-30) (emphasis added).

However, Ms. Seel's deposition differed as to who made the ultimate decision to terminate Plaintiff:

> Q: At the St. Petersburg location who made the decision to fire people after May 2003?
>
> A: The director - the interim director.

(Dkt. 21 at 136)
> . . .
>
> Q: Did you need her [Julie Bowman] approval to fire Donalyn Sommers?
>
> A: No.

Id.

> Q: Did you need corporate approval on all terminations?
>
> A: No.
>
> Q: Did you need corporate approval on the termination of Donalyn Sommers?
>
> A: No.

(Dkt. 21 at 131).

This deposition testimony clearly evidences uncertainty as to who made the ultimate decision to terminate Plaintiff. In fact, in Plaintiff's Opposition to Defendant's Motion for Summary Judgment, she questions whether Seel was in fact the person who made the

ultimate decision to terminate Plaintiff's employment (Dkt. 27 at 7).  As such, a genuine issue of material fact exists sufficient to preclude summary judgment.

The Court also finds that Plaintiff has demonstrated sufficient evidence of pretext to survive Defendant's Motion. Defendant contends that Plaintiff was terminated because she failed to promptly input paperwork and made a request to alter a CMN.  However, Plaintiff has presented evidence calling into question the legitimacy of Defendant's reason, specifically, Plaintiff's testimony that her inquiry about the CMN, which precipitated her termination, was merely for clarification about the proper procedures to use when handling an incomplete CMN, not an attempt to gain permission to falsify documents.[3]  The issue of her intent at the time she asked Ms. Seel about the CMN, i.e., whether she was truly attempting to obtain clarification or whether she was asking permission to falsify a document, is clearly not an issue this Court can address and is best left for a jury.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (Dkt. 26)is **DENIED**.

---

[3] Plaintiff has also identified as evidence of pretext the contradictory statements of Defendant's witness as they relate to termination.  While not detailed in her response, the Court finds that a review of the deposition testimony supports Plaintiff's position. For example,  Ms. Bowman testified that Plaintiff was terminated based on Plaintiff allegedly asking Ms. Seel if she could alter a CMN (Dkt. 16 at 44-45). Ms. Seel however, testified that Plaintiff was terminated for "poor performance." (Dkt. 21 at 82). While only Ms. Singleton identified both the performance issues (although no details were provided) and Plaintiff's handling of the incomplete CMN, the lack of certainty on the reason for Plaintiff's termination clearly calls into question Defendant's articulated reason for her termination (Dkt. 17 at 41-42).  Defendant's reason for termination is further called into question based on Defendant's failure to place the reasoning for the discharge on Plaintiff's discharge paperwork.

**DONE** and **ORDERED** in Tampa, Florida on February 1, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2005\05-cv-303 Denial Fla Whistleblower SJ Motion.frm